UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Larry Moody, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 05 C 5684 |
| | ) | |
| | ) | Judge Virginia M. Kendall |
| Cook County, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Larry Moody ("Plaintiff" or "Moody") filed this action against Defendant Cook County ("the County") alleging that the County failed to accommodate his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* and discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* Genuine issues of fact exist as to whether the County could reasonably accommodate Plaintiff's disability by assigning him to a position in the paint shop without bumping other employees out of their positions, creating a new position or reallocating essential functions of the position. As to Plaintiff's Title VII claim, however, Plaintiff's evidence that two Caucasian employees with arthritis currently perform the work in the paint shop is insufficient to convince a reasonable jury that the County refuses to accommodate him because of his race.

**Statement of Facts**

The County hired Moody as a painter in the Buildings and Grounds Department of the Bureau of Health Services of Cook County on March 4, 1994. (Def. ¶ 5.)[1] The County of Cook

---

[1] Plaintiff's Response to Defendant's Local Rule 56.1(a)(3) Statement of Material Facts in Support of its Motion for Summary Judgment.

Standard Job Description for a Painter ("Job Description") provides the minimum job qualifications, job description and job duties for a painter in Cook County ("Painter"). (Def. ¶ 10.) The Job Description states that being a Painter involves considerable standing, walking, lifting, pushing and other types of physical exertion. (Def. ¶ 13.) The Job Description further requires that a Painter must possess the physical stamina to stand, walk and climb throughout the day. (Def. ¶ 14.)

Anthony Giovannetti, Painter Foreman, supervised Moody from 1994 until the present. (Def. ¶ 7.) John Alsterda is the Director of Buildings and Grounds at John H. Stroger, Jr. Hospital ("Hospital"). (Def. ¶ 8.) As Director of Buildings and Grounds, John Alsterda is responsible for the maintenance of the facilities and the grounds at the Hospital, the regulatory compliance for the facilities and for addressing budget and personnel issues. (Def. ¶ 9.) John Alsterda also determines for all employees within his department, whether a medical restriction can be accommodated in consultation with Employee Health Services, the Human Resource Department and the employee's individual supervisor. (Def. ¶ 20.) Dr. Patricia Kelleher is the Director of Stroger Hospital Employee Health Services. (Def. ¶ 16.) Dr. Kelleher testified that the Hospital's practice when an employee requests work restrictions is for Employee Health Services to review the restrictions and check with the applicable department to see if it can accept the work restrictions. (Def. ¶ 17.) In cases where a department accepts the work restrictions, the employee returns to work pursuant to the accepted restrictions and is reviewed every few weeks to determine if the accommodated position is appropriate for both the employee and the department. (Def. ¶ 18.) If a particular department does not accept the work restrictions, the employee is referred to Human Resources to determine whether the employee can be reassigned to an open position at the Hospital. (Def. ¶ 19.)

Moody is a member of the painters union where he is classified as a journeyman painter.

(Plf. ¶ 3.)[2] Prior to 2002 and through the present Moody has suffered from severe osteoarthritis of the knees. (Plf. ¶ 9.) Moody went on non-duty disability leave from his job as a Painter for the first time in 2003. (Def. ¶ 23.) Moody spoke with Giovannetti in early 2004 about returning to work after his disability leave. (Plf. ¶ 15.) Although Moody officially returned from his first non-duty disability leave on May 4, 2004 without restrictions, Giovannetti, Alsterda and Kelleher understood Moody's limitations. (Def. ¶ 24; Plf. ¶ 11.) According to Giovannetti, Moody's Foreman, the County made an accommodation because there was work in the shop and they could utilize him despite the restrictions. (Plf. ¶ 11.) Giovannetti planned on having Moody work primarily in the paint shop and assigned Moody work that did not involve climbing, kneeling or standing for extended periods of time. (Def. ¶¶ 25-26.) Generally, work in the paint shop consists of sign making, mixing paint, doing inventories, doing stock work, standing and varnishing woodwork and painting or finishing small furniture. (Def. ¶ 37.) When Moody returned to work Giovannetti assigned him to do wood finishing, painting small items in the shop, learning the signage machine and hanging signs outside of the shop. (Def. ¶ 27.)

George Graves and Michael LaFrey, who are both Caucasian, worked in the paint shop at that time. (Def. ¶ 28.) Graves has been a Painter for 24 years and worked mainly in the paint shop for the last 16-17 years. (Def. ¶ 29.) Graves currently has arthritis in his knees, shoulders and hands. (Def. ¶ 30.) On any particular week, Graves will have between three to twenty-five job related functions outside of the paint shop and leaves the shop ten to twelve times a week to perform work related duties. (Def. ¶ 38.) LaFrey has been a Painter since 1982 and has been assigned to work

---

[2] Defendant's Response to Plaintiff's Statement of Additional Material Facts Pursuant to Local Rule 56.1(3)(B).

primarily in the paint shop for the last 13-14 years. (Def. ¶ 31.) LaFrey currently has arthritis, which limits the duties he can perform. (Def. ¶ 32.) LaFrey cannot carry 100-pound objects across the room, periodically has trouble with his balance and has a different walk. (Def. ¶ 32.) LaFrey occasionally leaves the paint shop, perhaps once every six months to assist on an emergency job. (LaFrey Dep. at 11, 15-16.) LaFrey rarely climbs on a ladder to perform his work. (LaFrey Dep. at 15, 19.)

On June 2, 2004, Giovannetti received a job request to re-label the cabinets in the architect's office. (Def. ¶ 40.) Giovannetti assigned the job to Moody. (*Id.*) To complete the assignment, Moody needed to remove the existing labels with a razor scraper or charm knife, remove the old adhesive and apply new labels. (*Id.*) Giovannetti and James Judge, the Assistant Foreman, estimated that the cabinets were six and a half feet high. (Def. ¶¶ 41-42, 45.) Moody described the cabinets as eight or nine feet high. (Plf. ¶ 26.) After removing a number of the labels – which Moody estimated at "over 100" and Judge estimated as much less – Moody returned to the paint shop and told Giovannetti that he could not complete the job because he could not reach the top cabinets without a ladder. (Def. ¶ 54, Plf. ¶ 27.) A disagreement between Moody and Giovannetti followed which, according to Moody, culminated with Giovannetti telling him to "Get the f--- out of here." (Plf. ¶ 28.) Moody then went to Employee Health Services and informed a doctor there that he would have to go back on disability. (Def. ¶ 52.)

Dr. Gregory Clark has been Moody's doctor since approximately 2000. (Clark Aff. ¶ 2.) On February 28, 2006, Dr. Clarke released Moody to return to work on limited duty with the following restrictions: no standing for more than five minutes, no climbing, no lifting of more than ten pounds, or walking for longer than two minutes. (Def. ¶ 58.) On May 8, 2006, the County gave Moody an

4

Employee Health Disposition Form which indicated that the County would not accept the restrictions imposed by Dr. Clarke on February 28, 2006. (Def. ¶ 67.) Dr. Clarke then provided Cook County with revised restrictions that consisted of no standing for more than five minutes and sitting from three to five minutes in between standing, walking no more than a maximum of one block and no lifting more than fifty pounds. (Def. ¶¶ 68-69.) John Alsterda reviewed the revised restrictions in consultation with Employee Health Services and Giovannetti and determined that the County could not agree to the restrictions. (Def. ¶ 70.) Moody currently remains under the same restrictions from his doctor. (Def. ¶ 74.)

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only when no reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248.

### I.     ADA Claim

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff establishes a *prima facie* case of discrimination by showing that he: (1) is disabled within the meaning of the ADA; (2) is qualified

to perform the essential functions of his job either with or without reasonable accommodation ("a qualified individual"); and (3) has suffered from an adverse employment decision because of his disability. *See Dvorak v. Mostardi Platt Associates, Inc.*, 289 F.3d 479, 483 (7th Cir. 2002). Defendant argues that Plaintiff has not submitted sufficient evidence to create a triable issue as to the fact that he was disabled or qualified to perform the essential functions of the job.

### A. Plaintiff's Disability

An individual is considered disabled under the ADA if: (1) he has an impairment that substantially limits one or more of his major life activities; (2) he has a record of such an impairment; or (3) his employer regards him as having such an impairment. *See* 42 U.S.C. § 12102(2). Whether an individual meets the ADA's definition of disabled requires an individualized, case-by-case analysis. *See DePaoli v. Abbott Labs*, 140 F.3d 668, 672 (7th Cir. 1998).

Plaintiff has been diagnosed with bilateral knee osteoarthritis. (Def. ¶ 59.) There is no dispute that this impairment impacts his "major life activities" of walking and standing. *See Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (holding that "major life activities" are those "activities that are of central importance to most people's daily lives"); 29 C.F.R. § 1630.2(i) ("Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"). An issue remains, however, as to whether Plaintiff's osteoarthritis substantially limits those major life activities. *See Scheerer v. Potter*, 443 F.3d 916, 918-20 (7th Cir. 2006) (applying *Williams* standard to walking and standing). "Substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general

6

population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). In determining whether an individual's impairment substantially limits his activity, the factors that should be considered are: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2 (j)(2).

Osteoarthritis of the knee generally is a degenerative joint disease. (Def. ¶ 60.) According to the restrictions that Dr. Clarke submitted to the County, Moody should not: stand for more than five minutes and sit from three to five minutes in between standing, walk no more than a maximum of one block and not lift more than fifty pounds. (Def. ¶¶ 68-69.) Moody described his knees as being worse at the date of his deposition, October 19, 2006, than they were on February 28, 2006. (Def. ¶ 63.) Plaintiff also described the considerable pain and difficulties that he suffers as a result of the osteoarthritis, including that he can walk only 2-3 blocks at a time and that it takes him ten to fifteen minutes to walk a block. (Def. ¶¶ 61-62.) The nature and severity of Moody's condition as diagnosed by Dr. Clarke and experienced by Plaintiff significantly restrict his ability to walk or stand as compared to the average person in the general population. *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999) (plaintiff must prove disability through not only medical diagnosis of impairment but also its effect on plaintiff); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) (holding that a reasonable jury could find that a plaintiff's neuropathy which prevented the plaintiff from walking more than one city block, was a substantial limitation compared to the walking that most people do daily). Further, Moody's osteoarthritis, with its accompanying conditions, is not temporary or intermittent. *See Vande Zande v. State of Wis. Dept't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995) ("Intermittent, episodic impairments are not disabilities"). Construing

all facts in Plaintiff's favor, a reasonable jury could find that he was disabled within the meaning of the ADA

B.  **Qualified Individual**

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The determination of whether Plaintiff was a "qualified individual with a disability" must be made on the basis of his "capabilities at the time of the employment decision." *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1059 (7th Cir. 1998). A Painter must be able to perform considerable standing, walking, lifting, pushing and other types of physical exertion. (Def. ¶¶ 12-14.) Plaintiff concedes that he cannot meet the qualifications as defined in the Job Description. (Def. ¶¶ 12-14.) Plaintiff instead argues that he is qualified to perform those job functions in the paint shop at the Hospital which do not require physical stamina or climbing and involve limited standing or walking. The County does not dispute that Plaintiff can perform certain functions in the paint shop. The real question thus is whether the accommodation that he is requesting is reasonable. *See Owens v. Quality Hyundai*, 2007 WL 495248, *4 n.9 (N.D. Ill. 2007) (noting dependent relationship between qualified individual and reasonable accommodation analyses).

C.  **Reasonable Accommodation**

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," except where the employer "can demonstrate that the accommodation

would impose an undue hardship on the operation of the business." § 12112(b)(5)(A); *see Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) ("Unlawful discrimination under the ADA includes both discriminatory discharge and the failure to provide reasonable accommodation"). In judging what actions an employer must take to accommodate an employee's disability, "[i]t is plain enough what "accommodation" means . . . [t]he difficult term is 'reasonable.'" *Vande Zande*, 44 F.3d at 542. The ADA defines "reasonable accommodation" as:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). While the reasonableness of a requested accommodation is generally a question of fact, certain legal standards exist: "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it. An accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) (citations omitted); *see Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996) ("Whether an accommodation is 'reasonable' is a question of fact, determined by a close examination of the particular circumstances").

Plaintiff argues that it was reasonable for the County to reassign him to a position in the paint shop where he could perform tasks which do not require physical stamina or climbing and involve limited standing or walking. Reassignment to a vacant position for which a disabled employee is

9

qualified is a form of accommodation. 42 U.S.C. § 12111(9)(B). The position in the paint shop falls under the same general Job Description of Painter as every other painter in the Hospital. For this reason, the County argues that Plaintiff must be able to perform the essential functions of a Painter generally. Regardless of whether the question is characterized as reassignment to a new job or assignment of different job responsibilities, the inquiry is essentially the same. The County need not bump other employees out of their positions, create a new position or reallocate essential functions of the position to other employees. *See Ozlowski v. Henderson*, 237 F.3d 837, 841 (7th Cir. 2001) ("While it is true that an employer may redistribute marginal functions of a job to other employees, an employer is not required to reallocate essential functions 'that the individual who holds the job would have to perform, with or without reasonable accommodation, in order to be considered qualified for the position.'"), quoting 29 C.F.R. § 1630, app.; *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374-75 (7th Cir. 2000) (stating that the obligation to accommodate reasonably does not mean that employers must "bump" another employee or create a new position). Accordingly, Plaintiff must adduce evidence that would permit a reasonable factfinder to infer the existence of a vacant and permanent position in the paint shop. *See Johns v. Laidlaw Educ. Srvcs.*, 199 Fed. Appx. 568, 570 (7th Cir. 2006).

When Plaintiff returned from disability on May 4, 2004, Giovannetti assigned Plaintiff to work primarily in the paint shop on tasks that did not involve climbing, kneeling or standing for extended periods of time. The fact that Defendant briefly tried to accommodate Plaintiff's disability does not itself prove that assignment to the paint shop would be a reasonable accommodation. *See Vande Zande*, 44 F.3d at 545 ("And if the employer . . . goes further than the law requires . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-

reaching an accommodation"); *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997) ("Employers should not be discouraged from doing more than the ADA requires even if the extra effort that perhaps raises an applicant's expectations does not work out."). Other evidence exists, however, that it would be reasonable for the County to accommodate Plaintiff's request. Giovannetti stated that there was available work that needed to be done in the paint shop and that the County could utilize Plaintiff despite the restrictions. (Plf. ¶ 11.) LaFrey said that he only occasionally leaves the paint shop, perhaps once every six months to assist on an emergency job and that he rarely climbs on a ladder to perform work. (LaFrey Dep. at 11, 15-16, 19.) If LaFrey is not regularly performing many of the duties of a Painter, a genuine issue exists as to whether they are essential job functions.

Plaintiff's prior work in the paint shop combined with the testimony from Giovannetti concerning available work and the apparent accommodation for the limitations on LaFrey's capabilities, create a genuine issue of material fact as to whether it would be reasonable for the County to accommodate Plaintiff by assigning him to a position in the paint shop where he could perform tasks which do not require physical stamina or climbing and involve limited standing or walking. At this stage, the County has not shown that there is no genuine issue as to whether it would need to bump another employee out of the paint shop, reallocate essential job functions or create a new position to accommodate Plaintiff. Similarly, there are genuine issues of fact regarding whether the County has legitimate reasons – such as seniority or a collective bargaining agreement – for assigning available work in the paint shop to other employees or that Plaintiff is not qualified to perform the necessary tasks in the paint shop. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 80-81 (1977) (holding that company need not accommodate religious preference of

employee where collective bargaining agreement gave other employees preference for weekends off); *Winfrey v. City of Chicago*, 259 F.3d 610, 618 (7th Cir. 2001) ("A position is not considered vacant if the employer has a legitimate reason, unrelated to the employee's disability, for reserving the position for others"). As such, a reasonable jury viewing the facts may conclude that the County could have reasonably accommodated Plaintiff. *See Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 601 (7th Cir. 1998) ("The reasonableness of a requested accommodation is a question of fact").

## II. Title VII Claim

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination through either the direct method or indirect method. Under either method, the appropriate summary judgment question is whether, construing all the facts and reasonable inferences therefrom in favor of the plaintiff, a reasonable jury could find that the employer took an adverse employment action against the plaintiff because of his race. *See Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 940 (7th Cir. 1997).

Defendant initially challenges whether Plaintiff has suffered an adverse employment action at all. Forcing an individual to go on leave by failing to accommodate his disability would constitute an adverse employment action. *See Timmons v. General Motors Corp.*, 469 F.3d 1122, 1128 (7th Cir. 2006). Plaintiff though offers insufficient evidence that the County refused to accommodate him because of his race. The only evidence of discrimination that Plaintiff presents is that the two employees – LaFrey and Graves – assigned to the paint shop are white. Plaintiff asserts that LaFrey

and Graves are being accommodated for their disabilities while he is not. LaFrey and Graves, however, are not similarly situated with Plaintiff. Graves has been assigned to work in the paint shop for the last 16-17 years. Graves has arthritis in his knees, shoulders and hands. Graves testified that his arthritis does not currently limit his work activities. On any particular week, Graves will have between three to twenty-five job related functions outside of the paint shop and leaves the shop ten to twelve times a week to perform work related duties. Plaintiff cannot perform some of the job functions that Graves performs outside of the paint shop, such as helping to unload several hundred gallons of paint from a delivery truck. LaFrey has been assigned to work primarily in the paint shop for the last 13-14 years. LaFrey currently has arthritis, which limits the duties he can perform. LaFrey cannot carry 100-pound objects and his difficulty with balance and walking. Important though is that LaFrey had no limitations at the time he began in the paint shop. (LaFrey Dep. at 21.) LaFrey got assigned to the paint shop when the previous worker in the shop got laid off. (LaFrey Dep. at 13.) Plaintiff avers that he observed LaFrey experiencing difficulties maintaining his balance and walking in 1998. Even if true, 1998 was several years after LaFrey was assigned to the paint shop. Ultimately, Plaintiff's scant evidence of discrimination is not sufficient to create a genuine issue of material fact that the County failed to accommodate his disability because of his race. *See Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 667 (7th Cir. 2005) ("The nonmoving party must offer something more than a "scintilla" of evidence to overcome summary judgment").

**Conclusion and Order**

Because genuine issues of fact exist as to whether the County could reasonably accommodate Plaintiff's disability without bumping another employee from the paint shop or reallocating essential

13

job functions, Plaintiff's ADA claim must be submitted to a jury. As to Plaintiff's Title VII claim, Plaintiff has failed to submit evidence creating a triable issue of fact that the failure to accommodate him was motivating by a discriminatory animus. Wherefore, Defendant's Motion for Summary Judgment is granted in part and denied in part.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 1, 2007